# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER A. BERNARD, and WYNTON A. BERNARD, | ) ) ) | Case No. |
| Plaintiffs, | ) ) | **JURY DEMANDED** |
| v. | ) ) | COMPLAINT FOR DAMAGES, |
| PHILIP A. IGNELZI, in his official and individual capacity, | ) ) ) | DECLARATORY AND INJUCTIVE RELIEF |
| Defendant. | ) ) ) | |

### VERIFIED COMPLAINT

COMES NOW Plaintiffs Walter A. Bernard and Wynton Bernard through their counsel,

Walter Bernard, Esquire and the Law Offices of Walter A. Bernard, PLLC and files the forgoing

Complaint against Defendant, Philip Ignelzi and avers:

### INTRODUCTION

1. This matter involves continuous actions by Defendant Philip A. Ignelzi which has caused and continues to cause a deprivation of multiple Civil Rights violations under 42 U.S.C §1983 against two Black professionals while Defendant acts in the absence of his jurisdiction.

2. Plaintiffs seek monetary damages as well as injunctive and declaratory relief, to remedy Defendant's violation of Plaintiffs' rights under the United States Constitution.

3. Defendant, Judge Ignelzi, while acting under color of state law, has caused Plaintiff, Walter Bernard, who is a Black attorney, to be: a) wrongfully arrested, b) forcibly removed from his residence and c) imprisoned for a day without probable cause.

4. Plaintiff, Wynton Bernard is a Black professional baseball player and has played with various affiliate organizations within Major League Baseball. Plaintiff, Wynton Bernard is the brother of Plaintiff, Walter Bernard and the two share the same residence.

5. On the morning of May 3, 2023, while Plaintiff Wynton Bernard was traveling for one of his baseball games, Attorney Bernard was in Plaintiffs' residence prepping for the work day. Attorney Bernard was startled when multiple officers converged onto Plaintiffs' residence and began continuously banging on Plaintiffs' front door.

6. Attorney Bernard was threatened that if he didn't open his front door, in a timely fashion that "*the situation was going to get worse.*"

7. During the unexpected visit to Plaintiffs' residence, a law enforcement officer even left a voicemail on Attorney Bernard's personal cellphone that if Attorney Bernard didn't come to the door, Attorney Bernard was going to jail.

8. While fearing for his family and his own safety from the armed law enforcement agents, Attorney Bernard attempted to deescalate the situation by eventually opening the front door.

9. Attorney Bernard was subsequently arrested in front of neighbors, humiliated and placed in the back of a marked law enforcement vehicle.

10. Attorney Bernard was arrested without law enforcement providing a copy of a warrant and the only explanation that was given to him by law enforcement as to his arrest was; "the Judge just wanted to see you." Attorney Bernard, without having breakfast nor taking his necessary medication pursuant to his medical needs was immediately

2

transported, jailed and placed in a cell with approximately five (5) other individuals for a
substantial part of the morning.

11. Attorney Bernard was subsequently shackled and paraded through the courthouse
hallways despite having never been arrested nor displaying any safety concerns.

12. Attorney Bernard was brought before Defendant, Judge Ignelzi and remained shackled in
the courtroom. Judge Ignelzi knew that Attorney Bernard's client, Wynton Bernard, was
not present in the courtroom. However, Judge Ignelzi mandated that Attorney Bernard,
while concurrently being deprived of his liberty interest and in the absence of his client,
was required to make a fifteen (15) minute decision with only two options if he wanted to
gain freedom from his shackles.

13. Attorney Bernard was required to: a) settle a pending civil case on behalf of himself and
his client with no ability to negotiate the specific settlement terms; or b) relinquish
Constitutionally protected documents of which the matter was pending before the
Appellate State Court.

14. Although Attorney Bernard was wrongfully arrested as a result of Judge Ignelzi acting in
absence of his jurisdiction, Judge Ignelzi continues to direct law enforcement to arrest
and incarcerate Plaintiffs Wynton Bernard and Walter Bernard causing them a
deprivation of their Civil Rights.

15. Plaintiffs bring this action against Defendant Judge Ignelzi in his official capacity for
injunctive relief under 42 U.S.C. § 1983 from the harassment and deprivation of liberty
rights when acting in the clear absence of jurisdiction, causing continuous harm towards
the Plaintiffs.

16. Subsequent to Attorney Bernard being unlawfully arrested and shackled, the harassing
conduct has gone as far as a uniformed Allegheny County Sheriff Officers while acting

3

under color of law, arriving at Plaintiffs' residence and an officer intentionally displaying his middle finger directed towards Plaintiffs' doorbell camera.

17. Plaintiffs bring this action against Defendant Judge Ignelzi in his Individual Capacity for damages to compensate them for Judge Ignelzi's unlawful actions, including wrongful arrest, wrongful imprisonment, punitive damages for recklessly disregarding Plaintiffs' Civil Rights while acting in the clear absence of jurisdiction and attorneys' fees pursuant to 42 U.S.C.§ 1988, declaratory and injunctive relief to prevent the ongoing unconstitutional acts.

18. Plaintiffs ask this Court to declare that Defendant's action requiring a Black attorney to settle a civil case while remaining shackled in order to coerce a settlement that benefits an attorney and his client that are both in a non-suspect class, to be unconstitutional.

19. Additionally, Plaintiffs ask this Court to declare the action requiring an attorney to settle a case without being able to speak to his client pertaining to the settlement terms as a condition to the attorney's being unshackled to be unconstitutional.

20. Plaintiffs seek declaratory relief that removing an attorney from his residence without a notice of hearing or legally valid warrant, when a similar situated opposing counsel had notice of the hearing, to be unconstitutional.

21. Plaintiffs need injunctive relief from the continual unconstitutional actions by Defendant which deprive their civil rights under 42 U.S.C. §1983.

22. Plaintiffs seek monetary damages against Defendant based on his actions while acting in absence of his jurisdiction. Additionally, the non-judicial acts requiring Plaintiffs to settle a pending civil lawsuit when Attorney Bernard was shackled in handcuffs without the ability to speak with his client and negotiate a settlement which have caused Plaintiffs injuries.

4

## JURISDICTION

23. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as causes of action enumerated arising under the United States Constitution, treaties and laws of the United States. The relief sought is authorized by the United States Constitution and by 42 U.S.C. §§ 1983 and 1988 for violations of protections guaranteed to them through the First, Fourth, Sixth and Fourteenth Amendments of the Constitution.

24. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

25. Declaratory Relief to grant all further relief necessary and proper is authorized under 28 U.S.C. §§ 2201 and 2202.

26. Venue is proper in this Court according to 28 U.S.C. §§ 1391(a) and 1391(e)(1)(C) because venue is proper where a defendant in the action resides. Defendant in his Official Capacity is a Pennsylvania State Official. As such, a state is held to reside in any district within that particular state. Moreover, a state with multiple judicial districts resides in every district within its borders. Thus, the Defendant resides in the Eastern District of Pennsylvania because the Eastern District is within the state borders of Pennsylvania.

## PARTIES

27. Plaintiff, WALTER A. BERNARD ("Attorney Bernard") is an African American business owner, licensed attorney and retired professional football player. Attorney Bernard is an adult individual and a citizen of the United States, residing in the County of Allegheny. Attorney Bernard maintains law offices in both the Eastern District and Western District of Pennsylvania.

5

28. Plaintiff, WYNTON A. BERNARD ("Wynton Bernard") is an African American business owner and current professional baseball player. Wynton Bernard is an adult individual and citizen of the United States, residing in the County of Allegheny.

29. Defendant, PHILIP A. IGNELZI ("Judge Ignelzi") is a state judge for the Court of Common Pleas of Allegheny County in the Commonwealth of Pennsylvania. Judge Ignelzi previously served in the Western District of Pennsylvania. At all times hereafter mentioned, Judge Ignelzi was acting under color of state law. Defendant Ignelzi is a "person" for purposes of 42 U.S.C. §1983, and an agent of Commonwealth of Pennsylvania. Judge Ignelzi is sued in his official and individual capacity.

<u>GENERAL FACTUAL ALLEGATIONS</u>

<u>Brief Background</u>

30. Plaintiffs are owners of a family entertainment escape room business, Amaze Me LLC, ("Tenant"), that was 100% inoperable due to Covid-19 governmental restrictions.

31. Tenant was sued by their landlord, 9795 Perry Highway Management Inc. ("Landlord") when it confessed judgment in the Court of Common Pleas in the Commonwealth of Pennsylvania. Plaintiffs were guarantors of the lease agreement between Landlord and Tenant.

32. Tenant, while inoperable was sued by Landlord for the Possession of the premises and sued Plaintiffs as guarantors of the lease agreement between Landlord and Tenant. The lease agreement contained a clause that allowed Tenant to refrain from paying rent while being shut down due to factors outside of its control which was at dispute in their civil case before the Commonwealth of Pennsylvania.

33. A few weeks before the matters were to be heard pertaining to Tenants' Confession of Possession hearing and Plaintiffs Confession for Money Judgment hearings, Landlord

stole thousands of dollars' worth of business and personal property from Tenant and Plaintiffs relocated within the leased space while shut down.  Shortly after the theft incident, Tenant vacated the premises.

34. Subsequently, a new tenant began to possess the Landlord's leased space and entered a new lease agreement with the Landlord approximately eight weeks (8) after the theft incident.  The Pennsylvania State Trial Court subsequently issued a decision Confessing Money Judgment for a money judgment against the Plaintiffs as Guarantors of the lease between Landlord and Tenant.   Judge Alan Hertzberg, a Pennsylvania State Court judge oversaw the proceedings.

35. When Judge Hertzberg issued his opinion, he ordered that the Plaintiffs were entitled to a credit amount upon execution of the money judgment, premised upon the new tenant moving in and taking over the leased premises.   The sum certain amount of credit to give the Plaintiffs was to be determined at a later date to prevent a double recovery by the Landlord.

36. Judge Hertzberg stated that *he retained jurisdiction* over all proceedings related to the execution on the judgment and when it came time to determine what the credit amount was to be given to Plaintiffs.

37. Although, Judge Hertzberg had exclusive jurisdiction over the matter, Landlord began to request discovery from Plaintiffs pursuant to Rule 3117 of the Pennsylvania Rules of Civil Procedure Discovery in Aid of Execution, which permits a party to perform discovery on another party in aiding [them] in executing on the judgment.  However, the condition set forth by Judge Hertzberg that *required the Plaintiffs be given credit as to any execution matters,* had yet to occur.

7

38. The new tenant was actually paying more in rent per month than Tenant had been paying.

39. Landlord began to make discovery requests and requested records that Plaintiffs determined personal and confidential, e.g., federal tax returns, personal bank statements. Further, the Landlord's post-judgment discovery requests were made out-of-sequence, i.e., prior to the Court [Judge Hertzberg] determining the credit amount for offset on the judgment.

40. Plaintiffs' disputed Landlord's discovery requests because a condition precedent for a credit to exist had not occurred. Hence, execution on the judgment was an impossibility because there was no ability to determine the final amount. Additionally, Plaintiffs cited Pennsylvania legal authority in Linde v. Linde 222 A. 3d 776 (Pa Super Ct. 2019), where the court reasoned that discovery in aid of execution was an impossibility when there is no ability to execute on a judgment.

41. Landlord and Plaintiffs went back and forth for months trying to reach settlement terms of the case but never agreed to a final amount.

MARCH 2023

42. On March 21st, 2023, the Commonwealth Court entered an order setting a hearing date so the parties could finally resolve the dispute as to how much Plaintiffs were to be credited and thereby fulfilling the condition previously set forth by Judge Hertzberg. However, within that same order, it allowed Discovery in Aid of Execution to proceed until a hearing was held on May 4, 2023 to establish a final judgment amount while preventing a double recovery.

43. On or around March 24th, 2023, Plaintiffs appealed the March 21, 2023 court order.

44. Under Pennsylvania Rules of Civil Procedure, the filing of an appeal divests the trial court of jurisdiction to "proceed further in the matter." Pa.R.A.P. 1701(a). Also, under 1701(c), when a party has appealed from a collateral order, the trial court retains jurisdiction to continue to act on those parts of the case that are unrelated to the collateral matter that is the subject of the appeal. Rosen v. Rosen, 549 A.2d 561, 564 (Pa. 1988). It is well established under Pennsylvania law that issues on appeal cause the trial court to lose jurisdiction on those matters before the appellate court.

45. On or about March 28, 2023, while the matter was before the Appellate Courts, Landlord filed a Motion for Sanctions in the Trial Court and it was submitted to Judge Ignelzi for not producing Discovery in Aid of Execution.

46. Although Judge Hertzberg retained exclusive jurisdiction over the matter, on April 4, 2023, Judge Ignelzi sent a meeting notice to have a hearing on April 19th, 2023 based on Landlord's motion. Landlord's counsel responded and requested to the court that the hearing be changed to April 27, 2023, which the court sent to Plaintiffs as a Microsoft Teams Notice.

47. On April 5, 2023, Attorney Bernard submitted an Emergency Application to Judge Ignelzi to stay all matters involved in the case until the parties had a hearing as to the Judgment amount.

48. Upon submitting the Emergency Application directly to Judge Ignelzi pursuant to his court procedures, Attorney Bernard heard back from Judge Ignelzi's law clerk on April 5, 2023 and instructed all parties that he would get back to everyone pertaining to the matter.

49. On April 27, 2023, Attorney Bernard still had a notification on his calendar that was previously sent from Judge Ignelzi's chambers from April 4, 2023. As such, Attorney

Bernard telephoned the Court to get a status update, since Judge Ignelzi' s chambers had

stated they would be in touch with everyone pertaining to the Emergency Application

that was submitted on April 5, 2023.

April 27, 2023

50. Judge Ignelzi began questioning Attorney Bernard if he had filed a response to

Landlord's motion.  Attorney Bernard explained that he was waiting to hear instructions

from the court after submitting his Emergency Application and that he was told by Judge

Ignelzi' s law clerk that someone would get back to him.  Judge Ignelzi instead began

proceeding with a hearing and disregarded the Emergency Application.

51. Judge Ignelzi began questioning Attorney Bernard as to why he appealed the March 21,

2023, court order.  Attorney Bernard reiterated that Plaintiffs had a heighten right to

privacy in their finances pursuant to the Constitution and that there were disputed,

ongoing issues between the parties.

52. As the April 27th, 2023 hearing went forward, Attorney Bernard often times attempted to

raise specific arguments before Judge Ignelzi but was often cut off from speaking by him.

Judge Ignelzi clearly knew that the matter was pending before the Appellate Court but he

continued with the hearing knowing he had no jurisdiction.

53. Judge Ignelzi knew that a pending matter to establish a final judgment was scheduled

for May 4, 2023.  However, Judge Ignelzi willfully ignored that he had no jurisdiction on

April 27, 2023 and put in an Order involving Discovery in Aid of Execution requiring

action by May 1, 2023.  Additionally, the Order stated that if Discovery was not

completed by Plaintiff within three days (3), he was going to direct the sheriff to arrest

both Attorney Bernard and his client, Wynton Bernard.

54. Judge Ignelzi knew or should have known that he didn't have jurisdiction over the subject matter based on 1) the matter being before the Appellate Court and 2) Judge Hertzberg never relinquished exclusive jurisdiction over the matter.

55. On April 28, 2023, Attorney Bernard contacted the court again to inquire the status of his Emergency Application. Attorney Bernard was then sent a denial of the Emergency Application and Judge Ignelzi directed the denial to be filed with the department of court records.

56. Landlord's counsel who is a White male, waited less than 24 (twenty-four) hours to get an answer when he submitted a *non-emergency* motion to Judge Ignelzi. However, Attorney Bernard had to wait three weeks for an answer when he submitted an emergency motion to Judge Ignelzi.

<u>May 3, 2023- Plaintiff is jailed and unexpectedly removed from his home</u>

57. Plaintiffs are one of the few Black residents in their community. For years, Plaintiffs have built a strong and positive reputation within their community and throughout the nation by their professionalism, moral character and personal success stories.

58. On Wednesday May 3, 2023 at approximately 8:00 am on Attorney Bernard's birthday, Judge Ignelzi upon information and belief, directed sheriff officers to take action which caused a severe disturbance within Plaintiffs' neighborhood.

59. Neighbors witnessed approximately 6 (six) law enforcement deputies from the Allegheny County Sheriff's Department yelling and banging on Plaintiffs' residence causing neighbors to witness the commotion.

60. Sheriffs continued to bang on the Plaintiffs' front door, windows and back door continuously for approximately one hour. Sheriffs even threatened Attorney Bernard that they were going to break into the residence.

11

61. At or around 8:56 am, one of the sheriff officers called Attorney Bernard on his personal cellphone and left a voice message demanding that Attorney Bernard open the door because if the behavior of not opening the door continued that he was going to jail.

62. Attorney Bernard called the sheriff back immediately and the sheriff indicated that Judge Ignelzi just wanted to "see him." The sheriff also threatened that if Attorney Bernard didn't come out, "the situation was going to get much worse."

63. Under the threat of armed officers breaking into Plaintiffs' residence with a break-in order from Judge Ignelzi, and being concerned for his family's safety, Attorney Bernard came outside of his front door.

Attorney Bernard wrongfully arrested and jailed

64. Attorney Bernard was arrested and escorted to the back seat of the Sheriffs' vehicle while neighbors continued to witness a Black attorney being taken away by multiple law enforcement agents.

65. Attorney Bernard was transported downtown to the Allegheny County Sheriff's Department where he was removed from the vehicle and shackled. Next, he was placed in a large prison jail cell with other inmates also known as the "bullpen." Contained within the jail cell with Attorney Bernard were approximately five (5) other prisoners.

66. Since Attorney Bernard was seized early in the morning, he didn't have a chance to eat breakfast and remained in the jail cell hungry with no food.

67. After being incarcerated for hours, he was eventually summoned to come out of the jail cell and was re-shackled.

68. Attorney Bernard was then escorted in shackles through the Criminal Court of Common Pleas of Allegheny County where he represents criminal defendants.

12

69. While still in shackles, Attorney Bernard was brought before Judge Ignelzi and was ridiculed for not opening his residential door quickly enough for the numerous deputies as they knocked outside. Additionally, Judge Ignelzi scorned and blamed Attorney Bernard for almost getting himself hurt. He also scorned and reprimanded Attorney Bernard for potentially causing harm to the sheriff deputies.

70. Judge Ignelzi confirmed that there were discussions with the Sheriff's Department that an approval of a break in order into Plaintiffs' residence almost occurred.

Non-Judicial Acts

71. While Attorney Bernard remained shackled in the courtroom, Judge Ignelzi gave Attorney Bernard an ultimatum consisting of two options to be decided within 15 minutes in order to be free from incarceration: 1) Attorney Bernard needed to settle the case that was currently on appeal before the Appellate Court in an amount that the opposing counsel had pre-determined with no ability to negotiate without his client being present; or 2) that Attorney Bernard was required to disclose the confidential information from both his and his client Wynton Bernard's private information.

72. After a few minutes, Attorney Bernard while remaining under duress, notified Judge Ignelzi of the decision he was required to make while being deprived of his liberty interest.

73. Judge Ignelzi made it clear that if Attorney Bernard did not agree to one of the two options within 15 minutes, Attorney Bernard would remain incarcerated.

74. Judge Ignelzi also exceeded his jurisdiction when he knew or should have known, that the required information he demanded Attorney Bernard to produce, was a matter before the Appellate Court. The information Judge Ignelzi was requiring Attorney Bernard to

produce was confidential information such as Federal Tax Returns, bank account statements and as well as other financial documents.

75. While remaining under duress, Attorney Bernard began involuntarily answering questions. Judge Ignelzi continued to threaten Attorney Bernard that if he did not respond with answers to his liking or if the answers were not sufficient, he was going to order that Attorney Bernard remain in the custody of the Allegheny County Jail. At one point during the interrogation, Attorney Bernard pleaded with Judge Ignelzi that his actions were unjust and unconstitutional. However, Judge Ignelzi responded with "you may not like it, but it is very just."

76. Judge Ignelzi continually mandated Attorney Bernard to answer questions in full without allowing Attorney Bernard to object to any of the questions. For example, when Attorney Bernard attempted to object to the relevance of answering questions pertaining to his 2018 income because the matter in dispute arose from events that occurred in 2020, Judge Ignelzi stated, "no, we're passed that." Judge Ignelzi made Attorney Bernard answer questions against his will and after Attorney Bernard would answer, he would then look at the opposing counsel in the courthouse and confirm if the answers were "good enough." Once opposing counsel verbally confirmed that answers were sufficient enough, Judge Ignelzi would proceed to the next question.

77. Judge Ignelzi finally allowed Attorney Bernard to be released from custody on condition that Plaintiffs produce all information and that opposing counsel was going to subsequently draft up and request. Judge Ignelzi then gave opposing counsel assurance that whatever was drafted, he would approve prior to seeing the Order.

78. Requiring an Attorney to settle a case on behalf of his client within 15 minutes while under the stress and duress of wearing handcuffs is not a judicial act normally performed by a judicial officer in civil court.

79. On May 4, 2023, while matter was still pending before the Appellate Court, Judge Ignelzi issued an Order requiring Plaintiffs to turn over their confidential personal bank account information by May 16, 2023.

Aftermath of the Arrest and Incarceration

80. Plaintiffs have had to face the embarrassment and shame having multiple law enforcement agencies arresting Attorney Bernard in plain view of neighbors.

81. The ridicule and stress from Judge Ignelzi's actions have detrimentally impacted Wynton Bernard's career as a professional athlete. As a public figure, Wynton Bernard has had to deal with damage to his reputation being one of the few Black American professional baseball players in organizations related to Major League Baseball.

82. Wynton Bernard has had to worry about being picked up by the sheriffs while performing his job as a professional baseball player.

83. Attorney Bernard has experienced the detrimental effects of Judge Ignelzi's actions; he has been displaced from his law offices and the ability to receive and send out communications from the Court and his clients restricted.

84. Plaintiffs no longer feel safe in their home and fear that deputies will return to remove them out of their house without notice.

85. On or around the morning of May 17, 2023, Attorney Bernard while meeting with one his client's received information from one of his neighbors that the deputies were going door to door looking for him. Upon further information and belief, sheriff deputies were at Plaintiffs' residence with a canine unit and multiple deputies.

86. Plaintiffs continue to be harassed at their residence with no probable cause or legal justification for the Court's actions.

87. Judicial Immunity does not protect Judge Ignelzi because he continues to act in clear absence of his jurisdiction.

## CLAIMS FOR RELIEF

### COUNT I- UNLAWFUL SEIZURE
(Fourth Amendment Violation- Unlawful Seizure)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. Philip Ignelzi)*

88. The allegations contained above are incorporated herein by reference as if the same were set forth at length.

89. At all times relevant to the acts and omissions herein alleged, Judge Ignelzi was acting under color of law and in the course and scope of his employment.

90. Under the Fourth Amendment to the United States Constitution, Plaintiffs have the right to be secure in their persons, houses and effects against unreasonable searches and seizures.

91. A seizure of property occurs under the Fourth Amendment when there is some meaningful interference with an individual's possessory interest in that property.

92. Upon information and belief, Judge Ignelzi directed sheriff officers to interfere with Plaintiffs' possessory interest in their property without a legally valid warrant.

93. The presence of multiple officers at Plaintiffs' residence along with the numerous threats for Plaintiffs to comply with the sheriffs' request to come out of their residence or face further consequences and jail time constituted a seizure under the Fourth Amendment.

94. Attorney Bernard's detention was unlawful because it was unreasonable in time and/or manner unnecessarily degrading, harmful, intrusive, humiliating, prolonged, and not justified under the circumstances.

95. Upon information and belief, Judge Ignelzi instructed state actors to use coercive pressure which resulted in a significant detainment of Attorney Bernard's freedom of movement because it was objectively clear that Attorney Bernard was not free to go when he nor Wynton Bernard had committed a crime.

96. The aforementioned facts of Attorney Bernard's unreasonable detention and search directly and proximately caused Attorney Bernard's injuries that include emotional distress and the deprivation of his liberty.

97. Judge Ignelzi has used his authority to create an opportunity of danger towards Plaintiffs that would not have existed but for Defendant's unlawful actions.

98. The conduct of Judge Ignelzi was willful, wanton, malicious, and done with reckless disregard for the constitutional rights and safety of the Plaintiffs.

99. The acts of Judge Ignelzi were intentional and proximately deprived Plaintiffs of their rights, privileges, liberties, and immunities secured by the Constitution of the United States.

100. It is foreseeable that Judge Ignelzi's actions would cause continual harm to Plaintiffs.

### Count II-UNLAWFUL SEARCH
(Fourth Amendment Violation- Unlawful Search)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. Philip Ignelzi)*

101. The allegations contained above are incorporated herein by reference as if the same were set forth at length.

102. The Fourth Amendment of the U.S. Constitution prohibits unreasonable searches.

103. Upon information and belief, a warrant that is signed by someone who lacks legal authority necessary to issue a valid warrant, is therefore void.

17

104. Judge Ignelzi required Attorney Bernard to testify while being shackled pertaining to confidential information he knew was on appeal and had no jurisdiction over, was an unconstitutional search.

105. Judge Ignelzi did not act in good faith because he knew the issue was on appeal and retaliated against Plaintiffs because the issue was before the appellate courts.

106. As a direct and proximate cause of Judge Ignelzi' s actions, Plaintiffs suffered injury in his forced requirement of Plaintiff to relinquish information, when Plaintiffs maintain a Constitutional right of privacy.

**Count III- DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS**
(Fourteenth Amendment-Deprivation of Liberty without Due Process of Law)
(42 U.S.C. §1983)
*(Walter Bernard v. Philip Ignelzi)*

107. The allegations contained in the above paragraphs are incorporated herein by reference as if fully set for here within.

108. The Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV.

109. Plaintiffs have both a fundamental property and liberty interest in remaining and residing in their property.

110. Judge Ignelzi has violated Attorney Bernard's federal and state due process rights by removing Attorney Bernard from his home without providing notice and an opportunity to be heard on an issue that he has no jurisdiction over.

111. Judge Ignelzi performed the above-described acts under color of state law, intentionally, with reckless disregard of Attorney Bernard's constitutional rights.

112. Judge Ignelzi knew or should have known that he had no jurisdiction over the issue to justify his restraint of Attorney Bernard from his residence.

18

113. Attorney Bernard's liberty interests were restrained prior to an adjudication of guilt in accordance with due process of the law.

114. Wynton Bernard had a constitutional right to have a hearing and to be heard on either his own behalf or through counsel which was deprived through the actions of Judge Ignelzi.

115. Judge Ignelzi acted under the color of law when he intentionally, willfully and maliciously directed government officials to arrest, jail and transported Attorney Bernard without due process of the law.

116. Judge Ignelzi's detention of Attorney Bernard was without legal authority, and unsupported by reasonable suspicion of wrongdoing, nor was there probable cause to believe that a crime had been committed, nor were there exigent circumstances.

117. As a direct and proximate result of Attorney Bernard being so detained, Plaintiffs have and continue to suffer emotional distress, humiliation, physical discomfort, and injury.

**COUNT IV-VIOLATION OF SUBSTANTIVE DUE PROCESS**
(Fourteenth Amendment-Retaliation Against Right to Privacy)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. Philip Ignelzi)*

118. The allegations set forth in the preceding paragraphs are incorporated as though full set forth herein.

119. Plaintiffs had an interest in avoiding disclosure of personal matters pursuant to Whalen v. Roe, 429 U.S. 589, 599(1977).

120. Plaintiffs claim damages for the violation of their right to privacy under the Fourteenth Amendment of the United States Constitution.

121. The societal interest in disclosure of Plaintiffs' privacy interest did not outweigh the need to breach Plaintiffs' privacy interest that Attorney Bernard was forced to do while handcuffed in the courtroom under duress.

122. Judge Ignelzi, unlawfully and without legal justification, while acting under the color of state law, deprived the Plaintiffs of their privacy right protected by the Fourteenth Amendments to the United States Constitution.

123. Judge Ignelzi, by his actions noted above, retaliated against the Plaintiffs for asserting their rights under the Fourteenth Amendment.  Additionally, Judge Ignelzi required Attorney Bernard to make a decision on behalf of his client Wynton Bernard, within a fifteen-minute time frame while being shackled and without allowing Attorney Bernard to discuss the settlement terms with his client.

124. Judge Ignelzi's actions were intentional, willful, and malicious, with a total disregard to the law, and shocks the conscience of reasonable person.

125. Plaintiffs were deprived protection against the arbitrary actions of Judge Ignelzi who engaged in egregious official conduct causing injury to Plaintiffs.

126. As a direct and proximate cause of Judge Ignelzi's actions and conduct, Plaintiffs suffered a deprivation of their Fourteenth Amendment rights through the disclosure of confidential information.

127. As a direct and proximate cause of Judge Ignelzi's actions, Plaintiffs' respective careers as professionals has suffered detrimentally.

## COUNT V – EQUAL PROTECTION
(Fourteenth Amendment-Deprivation of Equal Protection)
(42 U.S.C. §1983)
*(Walter Bernard and Wynton Bernard v. Philip Ignelzi)*

128. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

129. Plaintiffs state this cause of action against Judge Ignelzi in his official capacity for purposes of seeking declaratory and injunctive relief.

130. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.  U.S. Const. amend. XIV, §1.

131. Plaintiffs are members of a suspect class and were unlawfully discriminated against because of their race and deprived equal protection of the laws.

132. Attorney Bernard was similarly situated in all relevant aspects to other attorneys. Landlord's counsel whom is not a member of suspect class was able to negotiate freely without being shackled.

133. Wynton Bernard was unable to confer with his counsel prior a hearing because he was deprived of the notice of a hearing and had his counsel unlawfully removed from his residence only to shackled in court and make involuntary statements under duress.

134. Wynton Bernard is similarly situated to other litigants before the court.

135. Upon information and belief, Landlord as a litigant, was able to inform his attorney his desire or lack of desire involving the terms of a settlement proposal. Wynton Bernard did not have the ability to negotiate a settlement term nor discuss with his attorney because Judge Ignelzi gave his attorney 15 minutes to make that decision while being handcuffed.

136. Upon information and belief, Judge Ignelzi has not shackled attorneys belonging to a non-suspect class to settle to terms of a pending litigation while being handcuffed.

137. The relevant actions taken by Judge Ignelzi and referred to herein, were done by Judge Ignelzi while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States, specifically the Equal Protection Clause of the Fourteenth of the United States Constitution.

138. Judge Ignelzi' s acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiffs' constitutional rights.

139. Upon information and belief, the actions by Judge Ignelzi against Plaintiffs were taken with a racially discriminatory motivating factor.

140. The actions by Judge Ignelzi were wholly or partially based upon race.

141. Requiring Attorney Bernard as a Black attorney, to be removed from his residence, placed in jail, shackled and brought into the courthouse when he had not committed a crime had a discriminatory effect.

142. Judge Ignelzi' s actions causing Attorney Bernard to remain in shackles when Attorney Bernard was not a threat, when Attorney Bernard had never been arrested nor had a criminal record was motivated by a discriminatory purpose.

143. When viewing the specific sequence of events, Judge Ignelzi knew that Plaintiffs were members of a protected class and he treated Plaintiffs differently from individuals in an unprotected class.

**COUNT VI- SIXTH AMENDMENT RIGHT TO COUNSEL**
(Sixth Amendment Right to Counsel)
(42 U.S.C. §1983)
*(Walter Bernard v. Philip Ignelzi)*

144. Plaintiffs incorporate the above paragraphs as if full set forth herein.

145. Upon information and belief, Attorney Bernard was charged with criminal contempt on May 3, 2023.



146. The arrest of Attorney Bernard and the jailing of Attorney Bernard was made prior to any formal judicial hearing.

147. The right to counsel granted by the Sixth and Fourteenth Amendments of the Constitution mandates that an individual is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated, whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment.

148. Under the Sixth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment, guarantees a defendant the right to have counsel present at all critical stages of a criminal proceeding.

149. Individuals have a right to counsel during custodial interrogation by a state actor.

150. On May 3, 2023, Attorney Bernard was in custody because he was not free to leave as the result of being shackled and forced to answer questions presented by Judge Ignelzi.

151. Statements made during the May 3, 2023 hearing were not voluntary and Attorney Bernard never consented to the questioning by Judge Ignelzi before the court neither did he knowingly and intelligently waive his right to counsel in the criminal proceeding. Attorney Bernard had the right to have the assistance of counsel for his defense.

152. The Sixth Amendment Right to Counsel attached prior to being interviewed in shackles before Judge Ignelzi when Attorney Bernard had no notice of a hearing being held on May 3, 2023.

153. Judge Ignelzi said nothing to explain to Attorney Bernard the right of representation nor informing him his right to counsel during a critical state of a judicial proceeding.

154. The custodial interrogation of Attorney Bernard by Defendant was a violation of his Sixth Amendment Right to Counsel.

## COUNT VII -FOURTH AMENDMENT-FALSE IMPRISONMENT
### (Fourth Amendment- False Imprisonment)
### (42 USC. § 1983)
### *(Walter Bernard v. Philip Ignelzi)*

155. Plaintiffs hereby incorporate by reference the above paragraphs as though fully restated

herein.

156. Judge Ignelzi caused Attorney Bernard to be unlawfully arrested by using law

enforcement agents to remove him from his home, handcuffing him and jailing him.

157. Judge Ignelzi' s detention of Attorney Bernard was without legal authority, unsupported

by reasonable suspicion of wrongdoing, probable cause to believe that a crime had been

committed.

158. Judge Ignelzi acted with oppression, fraud and malice in detaining Attorney Bernard

when he knowingly didn't have jurisdiction over the matter involved with Plaintiffs'

pending civil case.

159. Attorney Bernard, as a result of the direction from Judge Ignelzi was unlawfully and

involuntarily confined against his will.

160. Attorney Bernard was conscious during the confinement which resulted in injuries

including physical discomfort and humiliation.

161. As a direct and proximate result of being detained by Judge Ignelzi, Attorney Bernard

continues to suffer emotional distress.

## COUNT VIII- ABUSE OF PROCESS
### (Wrongful Use of Civil Proceedings)
### (42 USC §1983)
### *(Walter Bernard and Wynton Bernard v. Philip Ignelzi)*

162. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

163. Judge Ignelzi used the legal process in issuing court orders he knew or should have

known that he had no jurisdiction over.

164. Judge Ignelzi used his authority and position as a state actor for the purpose of depriving Plaintiffs of their Constitutional Rights in the absence of jurisdiction.

165. Judge Ignelzi's actions caused harm to the Plaintiffs, eventually causing Attorney Bernard to be jailed.

166. Judge Ignelzi also obtained the testimony of Attorney Bernard by means of coercion, threat and intimidation when he obtained information from Plaintiff while shackled and under threat of remaining in custody if he did not comply.

167. Judge Ignelzi used his position of authority for the purposes of harassing and intimidating Plaintiffs which was a misuse of what the legal system was intended for.

168. Defendant's actions are the direct and proximate cause of the Plaintiffs' injuries.

## COUNT IX- DEFAMATION

### (42 U.S.C. §1983)
### (*Walter Bernard and Wynton Bernard v. Philip Ignelzi*)

169. Plaintiffs incorporate the above paragraphs as though full set forth herein.

170. By requiring that Attorney Bernard be detained and seized, in full view of his neighborhood, Judge Ignelzi communicated to the observes that Plaintiffs were criminals.

171. Judge Ignelzi knew or should have known that Plaintiffs were not criminals and he acted in reckless disregard of the truth that they were not criminals.

172. Judge Ignelzi through his actions, published that Plaintiffs were criminals by arresting Attorney Bernard in Plaintiffs' neighborhood and subsequently caused Attorney Bernard to be walked through two courthouses in shackles.

173. The actions by Judge Ignelzi were understood by neighbors in Plaintiffs' community that they were criminals.

174. Defendant intentionally infringed upon the reputation, honor and integrity of Plaintiffs that is materially false.

175. As a direct and proximate result of the actions by Defendant, Plaintiffs were injured in their representation of Judge Ignelzi' s actions and have continued to suffer embarrassment and humiliation.

176. Defendant's defamatory act was accompanied in violation of Attorney Bernard's liberty interest protected under the Constitution.

177. Defendant's defamatory act was accompanied and continued in violation of Plaintiffs First Amendment rights under the Constitution.

### COUNT X- FOURTH AMENDMENT-MALICIOUS PROSECUTION
(42 U.S.C. §1983)
(*Walter Bernard and Wynton Bernard v. Philip Ignelzi*)

178. Plaintiffs incorporate the above paragraphs as if full set forth herein.

179. Judge Ignelzi on May3, initiated a criminal proceeding against Plaintiffs.

180. Attorney Bernard suffered a deprivation of his liberty interest when he was seized from his residence.

181. Judge Ignelzi acted maliciously when he demanded that Attorney Bernard be shackled at the courthouse and attempted to get Plaintiffs to settle a case through the use of force.

182. The proceeding ended in Plaintiffs' favor and Attorney Bernard was released after providing testimony against his will.

183. The proceeding was administered after Attorney Bernard was arrested and without probable cause.

### COUNT XI- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(*Walter Bernard v. Philip Ignelzi*)

184. Plaintiffs incorporate the above paragraphs as if full set forth herein.

185. When Judge Ignelzi caused Attorney Bernard to be handcuffed and agreeing to settle the pending case, Judge Ignelzi was acting outside the scope of his employment because the conduct was far beyond what was authorized by the law.

186. The acts of Defendant were done with the purpose and intent that was not related to the service in which Defendant is employed.

187. Judge Ignelzi by his actions recklessly, willfully and intentionally, inflicted emotional distress upon Plaintiffs by having law enforcement come to Plaintiffs' residence and continually issuing unlawful directives meant to harass, injure and cause harm to Plaintiffs.

188. The conduct by Judge Ignelzi was extreme and outrageous because he required a Black attorney to be shackled while giving him an ultimatum while acting without jurisdiction.

189. The emotional distress sustained by Attorney Bernard was severe because he was removed from his residence in front of neighbors and thrown in jail for exercising the Constitutional Rights of his client and himself.

190. Attorney Bernard as the proximate cause of Judge Ignelzi's actions experienced insomnia, nightmares and anxiety.

## COUNT XI- FIRST AMENDMENT VIOLATION OF SPEECH
(First Amendment Violation-Compelling Speech)
(42 U.S.C. § 1983)
*(Wynton Bernard and Walter Bernard v. Philip Ignelzi)*

191. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

192. Attorney Bernard's advocacy on behalf of himself and Wynton Bernard was met with harassment and retaliation by Defendant.

193. Defendant while using his authority under color of state law, subjected Plaintiffs to the deprivation of their First Amendment rights by retaliating against them for exercising

their right of free speech in violation of clearly established First Amendment law. Those

acts include but not limited to:

a. Sending law enforcement to Plaintiffs' residence multiple times to threaten and

intimidate Plaintiffs.

b. Requiring Attorney Bernard to speak and not raise objections when he had legal

authority to raise objections on behalf of himself and his client.

c. Sending an unjustifiably large number of law enforcement officers to intimate

Plaintiffs.

194. Coupling a threat of incarceration with a demand that Attorney Bernard relinquish First

Amendment rights was outside of Defendant's legitimate powers.

195. It is clearly established that retaliating against individuals by threatening their liberty

because of an individual's speech is a violation of the First Amendment. A reasonable

governmental official would have had a fair warning that taking such retaliatory actions

is unconstitutional.

196. Defendant's unconstitutional acts, motivated by retaliatory animus, directly harmed

Plaintiffs and chilled their First Amendment rights by restricting their ability to make

legal objections.

**COUNT X- VIOLATION OF COMMERCE CLAUSE**
(42 U.S.C. § 1983, Art. 1 § 8, cl. 3)
*(Walter Bernard and Wynton Bernard v. Philip Ignelzi)*

197. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

198. Under the Commerce Clause of the United States Constitution, Plaintiffs have a right to

engage in interstate trade free from restrictive state regulation.

199. Attorney Bernard has pending matters in states outside of the Commonwealth of

Pennsylvania.

200. As a proximate and direct cause of Defendant's actions, Attorney Bernard's business matters have been significantly impacted.

201. Wynton Bernard as a professional baseball player is required to travel throughout multiple states within the United States.

202. Defendant's actions unlawfully regulating and threatening Plaintiffs' liberty have interfered with their ability to engage in interstate trade.

203. Defendant's state regulations have extra territorial effects that adversely affect economic production in other states that Plaintiffs conduct their prospective businesses as a proximate cause of Defendant's actions.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, WALTER BERNARD and WYNTON BERNARD pray that this Court enter a judgment in their favor against Defendant, PHILIP IGNELZI and award:

A.  Declaratory relief declaring Defendant Judge Ignelzi' s conduct to be unconstitutional;

B.  An injunction against Defendant Judge Ignelzi that enjoins further actions by his Court requiring Plaintiffs to be handcuffed and mandated in settling  civil case as a condition of Plaintiffs' liberty interests.

C.  Injunctive relief from compelling Plaintiffs to speak as a condition of their liberty interests.

D.  Injunctive relief from Defendant Judge Ignelzi's agents from harassing Plaintiffs outside of their job duties such as the lewd acts of giving Plaintiffs the middle finger for the purposes of intimidation.

E.  Reasonable costs and attorney fees included in bringing this action;

F.  General damages in an amount to be proven at trial to each and every claims herein;

G.  Punitive damages in an amount to be determined at trial;

H.  Such other relief as the Court deems just and proper.

Respectfully submitted,

**LAW OFFICES OF WALTER A. BERNARD, PLLC**

BY: _/s/ Walter A. Bernard, Esquire_
Walter A. Bernard, Esquire
PA I.D. No 321994

1150 First Ave Suite 531
King of Prussia, PA 19406
Phone: 215.261.7423
_Counsel for the Plaintiffs_

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER A. BERNARD, and<br>WYNTON BERNARD,<br><br>      Plaintiffs.<br><br>v.<br><br>PHILIP A. IGNELZI, in his official and<br>individual capacity,<br><br>      Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT FOR DAMAGES<br>DECLARATORY AND INJUCTIVE<br>RELIEF** |

## VERIFICATION

I, Walter A. Bernard, declare as follows:

1. I am a resident of Pennsylvania.

2. If called upon to testify, I would testify competently as to the manners set forth in the foregoing Verified Complaint.

3. I verify under penalty of perjury under the laws of the United States of American that the factual statements in this *Verified Complaint* concerning me and my past and intended activities are upon information and belief are true and correct to the best of my knowledge and understanding 28 U.S.C. § 1746.

             */s/ Walter A. Bernard*
              Walter A. Bernard

Executed on August 8, 2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WALTER A. BERNARD, and )
WYNTON BERNARD, )       Case No.
 )
                        Plaintiffs, )    **JURY DEMANDED**
 )
v. )
 )       **COMPLAINT FOR DAMAGES**
PHILIP A. IGNELZI, in his official and )   **DECLARATORY AND INJUCTIVE**
individual capacity, )       **RELIEF**
 )
                        Defendant. )
 )

## **VERIFICATION**

I, Wynton A. Bernard, declare as follows:

1. I am a resident of Pennsylvania.

2. If called upon to testify, I would testify competently as to the manners set forth in the

   foregoing Verified Complaint.

3. I verify under penalty of perjury under the laws of the United States of American that

   the factual statements in this *Verified Complaint* concerning me and my past and

   intended activities are true and correct to the best of my knowledge and

   understanding 28 U.S.C. § 1746.

   _____
   Wynton A. Bernard

Executed on August 1, 2023